**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

ALBERT H.[1],

    Plaintiff,

      v.

FRANK BISIGNANO, COMMISSIONER
OF SOCIAL SECURITY[2],

    Defendant.

CASE NO. 1:24-CV-280-SJF

### OPINION and ORDER

Plaintiff Albert H. ("Mr. H") seeks judicial review of the Social Security

Commissioner's decisions denying Mr. H's application for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social

Security Act ("Act"). This Court may enter a ruling based on the parties' consent

pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). [DE 11]. For the reasons

discussed below, the Court **REMANDS** the decisions of the Commissioner of the Social

Security Administration ("SSA").

### I.    OVERVIEW OF THE CASE

Mr. H. filed his application for disability insurance benefits ("DIB") on May 23,

2022. (Administrative Record 27; hereinafter "AR"). On May 24, 2022, he also

protectively filed an application for supplemental security income ("SSI"), alleging

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

disability beginning March 21, 2022. (AR 27). His claims were denied initially, on

reconsideration, and after a hearing before an administrative law judge ("ALJ"). (*Id.*).

The ALJ issued her unfavorable decision on December 22, 2023. (AR 39). Mr. H then

requested further review of the ALJ's decision, and the Appeals Council denied this

request on May 16, 2024. (AR 1). Thus, the ALJ's decisions became the final decisions of

the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Mr. H. filed suit in this court on July 11, 2024. This Court has jurisdiction under

42 U.S.C. § 405(g).

## II.    APPLICABLE STANDARDS

### A.  Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the

Act. A person is disabled under the Act if "he or she has an inability to engage in any

substantial gainful activity by reason of a medically determinable physical or mental

impairment which can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work

activity that involves significant physical or mental activities done for pay or profit. 20

C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB

under the Act includes determinations of: (1) whether the claimant is engaged in

substantial gainful activity; (2) whether the claimant's impairments are severe; (3)

whether any of the claimant's impairments alone or in combination, meet or equal one

of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can

2

perform his past relevant work based on his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

### B.  Standard of Review

The Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not

3

reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.  DISCUSSION

#### A.  Summary of the ALJ's Decisions Denying Benefits

Mr. H's telephonic hearing before the ALJ took place on November 2, 2023. (AR 27, 48). Mr. H was represented by an attorney. (AR 48-49). On December 22, 2023, the ALJ issued her written decision denying both of Mr. H's applications, conducting the

requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520. (AR 27).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Mr. H. had not engaged in substantial gainful activity from the date of his applications through the dates of the ALJ's decision. (20 C.F.R. § 404.1571 et seq., and § 416.971 et seq[3].). (AR 29).

At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ concluded that Mr. H suffered from the following severe impairments: degenerative disc disease with disc bulge in the lumbar spine; cervical radiculopathy; obstructive sleep apnea; obesity; migraine; sacroiliitis; chronic pain syndrome; attention deficit hyperactivity disorder; asthma/allergic rhinitis; bipolar disorder; and personality disorder. (AR 29). The ALJ thus concluded that these medically determinable impairments significantly limit Mr. H's ability to perform basic work activities as required by SSR 85-28. On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). The ALJ found that Mr. H

---

[3] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will largely refer to only 20 C.F.R. § 404 unless explicit distinction or discussion between the DIB and SSI regulations is necessary.

had the following nonsevere impairment: hypertension. (AR 30). Finally, the ALJ found that Mr. H's reported hearing loss was not supported by objective audiological testing and so declined to find Mr. H was impaired in such a manner. (AR 30).

The ALJ concluded at Step Three that Mr. H does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ considered Listings 1.15, 1.16, 12.04, 12.08, 12.11, all applicable 3.00 Listings, SSR 19-4p, SSR 19-2p. (AR 30-31). Relevant here, in making this determination, the ALJ consulted the paragraph "B" criteria for mental impairments. (AR 31). In support, the ALJ found that Mr. H has moderate limitations in understanding, remembering, or applying information, in the ability to adapt or manage himself and in interacting with others. (AR 31). The ALJ found that Mr. H has mild limitations in his ability to concentrate, persist, or maintain pace. (AR 31). The ALJ determined that because Mr. H's mental impairments did not cause at least two marked limitations or one extreme limitation, the paragraph "B" criteria was not satisfied[4]. (AR 31). Further, the ALJ determined that the medical record did not support a finding that Mr. H has achieved only a marginal adjustment as understood by Listing 12.00(G)(2)(c).

---

[4] *See* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (last visited March 16, 2026).

Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Mr. H can perform his past relevant work based on his residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ concluded that Mr. H retained the RFC to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b). The ALJ determined that Mr. H could:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently balance as defined in the SCO of the DOT; frequently stoop, kneel, crouch, and crawl; occasional overhead reaching with the bilateral upper extremities, and frequent reaching in all other directions with the bilateral upper extremities; frequently handle, finger, and feel, bilaterally; avoid concentrated exposure to hazards, such as unprotected heights and unguarded moving mechanical parts; avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants - as defined in the Selected Characteristics of Occupations of the DOT; understand, remember, and carry out simple instructions; frequent interactions with coworkers and supervisors, and occasional interaction with the public.

(AR 32). Based on this RFC, at Step Four, the ALJ found that Mr. H was unable to perform his past relevant work as a fast foods crew member. (AR 37). Accordingly, the

ALJ moved on to last step in the five-step sequential analysis to determine whether Mr. H could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). The ALJ found that, while Mr. H could not perform any past relevant work, he retained the RFC to perform the representative jobs of classifier (approximately 138,000 jobs nationally), inspector/ hand packager (approximately 167,000 jobs nationally), and laminating machine tender (approximately 17,000 jobs nationally). (AR 38).

Finding that Mr. H could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Mr. H was not disabled since March 31, 2022, through the date of the ALJ's decision. (AR 38).

### B. Issue for Review

On review, Mr. H challenges the ALJ's evaluation of the medical opinion evidence regarding his mental impairments in the record. Mr. H. does not challenge the ALJ's evaluation of the medial opinion evidence regarding his physical impairments. When determining the scope of Mr. H's mental impairments, the ALJ evaluated opinions from the following relevant medical providers in her decision: nurse practitioner ("N.P.") Rana Stoops, a consultive examiner who evaluated Mr. H twice; Dr. Stephen Parker, M.D., a non-examining state agency physician; Dr. William Shipley,

Ph. D., a non-examining state agency psychologist; and Dr. Ann Lovko, Ph. D., a non-examining state agency psychologist.  (AR 429-444; AR 415-328; AR 106-115; AR 77-84).

Mr. H challenges the ALJ's evaluation of N.P. Stoop's, Dr. Shipley's, and Dr. Lovko's opinion, contending that the ALJ failed to adequately explain why she decided to incorporate frequent interactions with coworkers and supervisors into Mr. H's RFC when the opinions did not support such intensity and duration of interaction. [DE 12 at 9-16]. Mr. H further argues that the ALJ erred when she did not orient the vocational expert during the hearing to what impact the limitation of brief interaction with supervisors and coworkers would have to relevant work in the national economy.  In response, the Commissioner maintains that the ALJ's evaluation of the medical opinion evidence was consistent with the ALJ's obligations under the regulations and that the ALJ provided substantial support for the finding of no disability. [DE 17].

As discussed below, the Court agrees with Mr. H that the ALJ did not articulate why she rejected this medical opinion evidence. Accordingly, remand is required here.

### A.  Nurse Practitioner Rana Stoops

Mr. H argues that the ALJ did not provide sufficient reasons as to why she did not find N.P. Ms. Stoop's opinion resulting from her examination persuasive. The Commissioner disagrees and argues that the ALJ adequately explained the factors of support and consistency when evaluating why she found Ms. Stoop's examining opinions unpersuasive.

### 1.  Ms. Stoop's Examinations and Opinion

Ms. Stoops examined Mr. H's mental status on November 18, 2022. (AR 434). She supplemented her report on December 12, 2022. (AR 436). Ms. Stoops' evaluation included background information, an overview of Mr. H's statements regarding his employment and medical history, her observations as to Mr. H's behavior and appearance, an overview of Mr. H's reported daily activities and behavioral health, a mental status examination, and a medical source statement or summary. At the conclusion of the examination, Ms. Stoops' Medical Source Statement/Summary provided that:

> The claimant is able to manage his own funds and understand, remember simple instructions. In addition, he is able to carry out: work like tasks within a reasonable persistence and pace. He is able to respond appropriately to brief superficial interactions and tolerate stress in an entry level position.

(AR 434-35). In her supplemental report, Ms. Stoops diagnosed Mr. H with attention deficit hyperactivity disorder and bipolar type II based on her observations in the consultive examination. (AR 438).

### 2.  The ALJ's Evaluation of Ms. Stoop's Opinion

In her decision, the ALJ found that Ms. Stoops' opinion was unsupported by her explanation, not consistent with the record, and unpersuasive. (AR 36).  The ALJ noted that "'brief' is not a vocationally relevant term, but the record does reflect the need for limits interacting with others in terms of frequency and not intensity." (*Id.*). The ALJ noted that Mr. H has no issues dealing with providers "and there are references to him playing basketball and with improvement with medications." (*Id.*). The ALJ also noted

10

that Ms. Stoops reported of Mr. H's personality issues and inpatient hospitalizations but that neither were "consistent with the longitudinal record." (*Id.*). As for the term "brief," in the context of the interactions Mr. H was able to tolerate, the ALJ noted that Ms. Stoops' usage was "not consistent with the records that document no behavior or mood instability, other than that which was reported to the consultive examiner." (*Id.*). Finally, the ALJ took issue with Ms. Stoops' use of "entry level work" as it "is also not a vocationally defined term, and is a description, rather than a functional impairment." (*Id.*).

### 3.  Mr. H's Arguments Regarding the ALJ's Evaluation

Mr. H argues that the ALJ did not provide sufficient support for rejecting Ms. Stoops' opinion. The court focuses on two main threads of his arguments. First, Mr. H argues that the ALJ did not provide a sufficient logical bridge between her rejection of Ms. Stoops' opinion and her determination that Mr. H could handle frequent interactions with coworkers and supervisors. Second, Mr. H argues that the ALJ improperly weighted Mr. H's inconsistent treatment of his mental conditions against him when rejecting Ms. Stoops' opinion, when evidence existed that Mr. H was unable to obtain these treatments because of his lack of health insurance.

An ALJ must sufficiently articulate her analysis of the record in order to assure the court that she has considered the important evidence and enable the reviewing court to articulate the path of her reasoning. *Scott*, 297 F.3d at 595 (quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999)). To do this, the ALJ must build an "accurate and logical bridge from the evidence to [her] conclusion" so that the reviewing court "may

11

assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Id.* (internal quotations omitted).

When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered "severe." *Id.* § 404.1545(a)(2), (b), (c). Mental limitations must be part of the RFC assessment, because "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." *Id.* § 404.1545(c).

Generally, an ALJ is not required to credit the agency's medical examiner if a contrary opinion or other compelling evidence exists. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. July 10, 2014). However, rejecting or discounting this opinion is an unusual step that must be accompanied with a good explanation. *Id.*; *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir.2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

Here, Dr. Lovko's, the non-examining state agency psychologist, narrative statement opined that Mr. H could "respond appropriately to brief supervision and interactions with coworkers" and so did not contradict Ms. Stoops' opinion. (AR 83). Dr. Lovko's opinion was affirmed by non-examining state agency psychologist William

Shipley. (AR 103). Therefore, based on the medical opinions in the record, it is not clear why the ALJ determined that, contrary to Ms. Stoops' opinion, Mr. H could tolerate frequent interactions with coworkers and supervisors.

Further, the ALJ "must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight v. Chater*, 55 F.3d 309, 313-14 (7th Cir. 1995). Mr. H takes issue with the ALJ's rejection of Ms. Stoops' opinion based on the short shrift the ALJ gave to terms "brief" and "superficial." [DE 12 at 12]. The ALJ summarily rejected any inference as to Mr. H's ability to work from the terms, stating specifically that "brief" was not vocationally relevant. (AR 36). Mr. H argues that the ALJ did not build the requisite logical bridge between her rejection of Ms. Stoops' opinion and his resulting work limits which allowed for frequent interactions with coworkers and supervisors. Mr. H argues that, contrary to the ALJ's contention, courts have recognized "brief" to mean a short interaction and "superficial" to describe the quality of the interaction. [*Id.*] (citing *Cote v. Colvin*, 16-cv-57-slc, 2017 WL 448617, at *21-23 (W.D. Wis. Feb. 2, 2017); *Wartak v. Colvin*, Cause No. 2:14-CV-401-PRC, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016); *George S. v. Kijakazi*, Cause No. 1:22-CV-169-JVB, 2023 WL 3436712, at *6-*7 (N.D. Ind. Apr. 21, 2025). The Commissioner argues that with regard to social interaction, the ALJ's explanation that "the interacting limits were supported by the treatment records showing no need for crisis case, emergency room care, or ongoing talk therapy during the period at issue[,]" constituted sufficient rationale for rejecting the limitation. [DE 18 at 9]. Examination by a provider in a healthcare setting may be

13

less stressful than frequent interactions with colleagues. Despite Mr. H's mild manner and positive behavior during the examination, Ms. Stoops opined that brief superficial interactions in the workplace would be most appropriate for Mr. H.

The court further notes, like Mr. H [DE 12 at 12 n. 1], that the ALJ discounted Ms. Stoops' opinion based on him playing basketball, even though her evaluation does not mention basketball at all[5]. The ALJ's reference to this evidence suggests that the ALJ's rationale for rejecting Ms. Stoops' opinion was at least partially supported by casual inference, which is improper. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) (citing *Hughes v. Astrue, 705 F.3d 276, 278-79 (7th Cir.  2013)*).

The ALJ also improperly drew a negative inference from Mr. H's lack of treatment history without exploring his reasons for not getting treatment during the relevant time period. *See Garcia v. Colvin*, 741 F.3d 758, 762–63 (7th Cir. 2013); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); 20 C.F.R. §§ 404.1529(c)(3)(v); 416.929(c)(3)(v); SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) (explaining that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not ... seek treatment consistent with the degree of his or her complaints"). Here, Mr. H stated that his treatment had lapsed based on a loss of his health insurance, but that he had been seeking to restart treatment since the lapse. (AR 64-65).

---

[5] The Commissioner points to several portions of the record that mention basketball as aggravating Mr. H's physical pain (AR 631, 636, 639, 644, 647, 651, 654, 659, 662, 669), and points out that the it "caused no interaction limits despite the nature of this team sport." [DE 18 at 12]. However, the record is not clear whether Mr. H played basketball on a team or whether he practiced the sport solo on a causal basis.

It is true that "infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." *Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir. 2008), citing Social Security Ruling 96–7p. But the ALJ may not draw any inferences "about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft,* 539 F.3d at 679; SSR 96–7p. Instead of addressing this gap between Ms. Stoops' opinion and the lack of corroborating medical records, the ALJ instead flatly discounted it, concluding "the records that [sic] document no behavior or mood instability, other than that which was reported to the consultive examiner." (AR 36). In doing so, the ALJ failed to build a logical bridge that supported greater social interaction than that opined by Ms. Stoops. Accordingly, the ALJ's evaluation is not supported by substantial evidence.

### B.  Mr. H's Arguments About Other Medical Opinions

As stated, Mr. H contends that the ALJ's evaluation of other medical opinions and administrative medical findings in the record as related to his mental health determination also requires remand. The Court declines to address these other arguments based on the issues identified with the ALJ's evaluation of Mr. H's RFC. The ALJ will have the opportunity to fully discuss and reevaluate Mr. H's allegations about other medical opinions and administrative medical findings on remand.

15

Further, Mr. H's arguments as to the availability of relevant work in the national economy can be considered on remand, and so his arguments need not be addressed here.

**IV.   CONCLUSION**

For these reasons, the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 18th day of March 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge